Argued March 15; affirmed April 4, 1933

## WEST *v.* MOBLEY ET AL.
### (20 P. (2d) 432)

*Guy O. Smith,* of Salem, for appellant.

*R. S. Kreason,* of Dallas (Oscar Hayter, of Dallas, on the brief), for respondents.

CAMPBELL, J. This is a suit to foreclose a mechanic's lien on real property, arising out of a contract to sink a well on the premises of defendant.

The facts are about as follows:

Defendants were the owners of an acre of land a short distance beyond the city limits of West Salem in Polk county, Oregon. They purposed to build a residence thereon but, before doing so, desired to secure a water supply sufficient for their domestic needs and

to irrigate a lawn and a small garden; that on August 15, 1930, they engaged plaintiff to sink and encase a well, for a certain price per foot, that would supply their needs. The well was to be located in the basement of their prospective house at a point designated by defendants. Plaintiff proceeded accordingly and sank the well to a depth of about 225 feet and, under the contract, earned the sum of $720 and that there was paid thereon the sum $274, leaving a balance of $446, for which plaintiff timely filed the lien, under foreclosure herein. Up to this point, the facts are undisputed.

Defendants allege that when plaintiff had attained that depth in the well he warranted and assured them that he procured a flow of water sufficient for their needs and of not less than 300 gallons per hour; that, thereupon, defendants bought and installed a pump and equipment with a capacity of 350 gallons per hour, at a cost of $475, and built their house. They allege that they then discovered that the well would supply only 175 gallons per hour and, by reason of the house having been built, it would be impractical to sink the well deeper. The defendants further allege that a flow of water of 175 gallons per hour is insufficient for their needs; that it will cost them $200 to make a water connection with the city of West Salem; that the well is useless to them and that they have been damaged in the sum of $675, the amount paid for the pump and its installation, and the estimated cost of connecting with the water system of West Salem.

The reply denied the new matter in the answer.

On these issues and the testimony in support thereof, the cause was submitted to the court who foreclosed the lien in the sum of $226 and attorney fees of $50 and costs. Plaintiff appeals.

The testimony of defendants is to the effect that when plaintiff had drilled to a depth of 225 feet he warranted them that the flow of water was 300 gallons per hour and they depended on that warranty; that they would have had plaintiff drill deeper, had he not so assured them.

In the original contract as alleged in defendant's answer, under which the work was begun and prosecuted, defendants do not claim that mention was made of any specific quantity of water except enough, "to supply the dwelling house  *  *  *  and to irrigate the lawn  *  *  *"; that relying on the warranty, they bought this 350-gallon pump and paid $475 for it. The lawn they contemplated irrigating, covered a space of 1,060 square feet. Mr. Mobley testified that before he installed the pump, he suspicioned that there was not enough water, so had a careful test made on his own account and found that the well would only flow 175 gallons per hour. The witness seems to be a little hazy as to the date that this test was made. He thinks that it was sometime in January but the evidence shows that it must have been made sometime before December 8, 1930, the time defendants' attorney, at defendants' request, wrote the letter to plaintiff's attorney, as in that letter attention is called to the fact that the test had been made from which it was determined, "that the flow does not exceed 180 gallons per hour." Mr. Mobley testified that he knew the contents of the letter. The record does not disclose how far along the house was built at the time of the test. This test was made before the 350-gallon pump was installed.

■ There is no competent testimony, except by inference, as to the quantity of water that would be re-

quired for defendants' purposes. If the well supplies 175 gallons per hour, and that is what defendants' witnesses say it does, then it can be mathematically demonstrated that that amount is sufficient to furnish more than 250 gallons for household purposes and cover the contemplated lawn with water to a depth of six inches every twenty-four hours. Surely a sufficient quantity.

■ ˙ Defendants testified that when the 350-gallon pump is started it will run satisfactorily for only about twenty minutes. This undoubtedly is true and what should be expected. In their answer they claim that they would not have bought such a large pump if the plaintiff had not assured them of the flow of 350 gallons per hour. However, defendant, Karl Mobley, testified that he did not entirely rely on plaintiff's alleged warranty but made a test for himself before the installation of the 350-gallon pump. Defendants were dealing with plaintiff at arm's length and had no right to rely on plaintiff's statements as to the quantity of water when they had means within their own power to determine whether these statements were true.

Plaintiff's contract was for drilling and encasing the well. He had nothing whatever to do with the pump or its installation.

We fully agree with the principles announced in *Sigworth v. Holcomb*, 79 N. W. 364:

"Where one agrees to drill a well to furnish sufficient water for stock and domestic uses, and the well is insufficient for either use, he is not entitled to compensation for the well drilled".

It must be remembered that in the instant case plaintiff entered into a similar contract as the one just

quoted, and that defendants' claim is that it was after the completion of 'the contract that the warranty of 300 gallons an hour was made. Plaintiff denies quite strenuously that any warranty or representations were made as to the capacity of the well except that the flow was sufficient to furnish the quantity defendants required.

The evidence of defendants sustains the allegations that plaintiff complied with his contract and that he drilled a well with sufficient capacity to supply defendants' needs. He is, therefore, entitled to the compensation fixed by the contract.

The decree of the lower court will be modified and the cause remanded with instructions to foreclose the lien in the sum of $446. In all other respects, the decree is affirmed.

RAND, C. J., BEAN and BAILEY, JJ., concur.